Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employee/employer relationship existed between the parties on December 6, 1994 which is the date plaintiff alleges her injury.
2. At the time plaintiff contends she was injured, her employer was a qualified self-insured under the terms of the Act.
3. The plaintiff's average weekly wage was $492.02 at the time of the alleged injury yielding a compensation rate of $328.18.
4. The plaintiff has not worked with the employer since December 6, 1994.
5. As a result of her mental condition, plaintiff has received 26 weeks of short term disability in the amount of $275.00 per week from a source solely funded by the employer.
6. The basis of plaintiff's claim is a discussion with her supervisor during which plaintiff alleges she was terminated.
7. All medical records regarding the plaintiff are stipulated into evidence including the medical records of Charter Hospital of Greensboro, Dr. Joel A. Vogt, Moses Cone Hospital, Bowman Gray School of Medicine, Dr. H. Richard Parker II, Dr. A. V. Blount, Jr., Dr. Arthur F. Carter and Guilford County Department of Public Health, Mental Division.
 ***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 62 years of age. Plaintiff began working for the defendant-employer Asea Brown Boveri on August 12, 1974 and was employed as an assembly line terminal maker. Subsequently she was laid off for approximately one year but then resumed her employment and continued working for defendant-employer until the sixth day of December 1994.
2. Over the course of her years of employment, plaintiff had a history of not keeping up with her work. Plaintiff did not take directions well from her immediate supervisor, Richard Church, and was observed on many occasions refusing to do work she was instructed to do. She felt slighted by her supervisor and felt he favored other employees over her. Plaintiff had worked under the same supervisor for 20 years and always thought he did not like her, but she never asked for a transfer.
3. The plaintiff was a loner at work and did not get along with some of her co-employees, and normally sat alone during breaks. During her work with the defendant-employer, her supervisors moved her into different jobs on several occasions because of plaintiff's conflicts with her co-employees.
4. During her tenure of employment with defendant-employer plaintiff's supervisors became increasingly unhappy with her work performance and had placed her in one of the least demanding jobs in the plant. Plaintiff's supervisors gave her a "time study" which determined the amount of work she could do at her own pace (not compared to other employees). However, the plaintiff was not performing up to her own time study. On several occasions the plant's assembly line came to a standstill because plaintiff could not or would not keep up with her bagging of L-brackets.
5. In December of 1994 plaintiff had many different life stressors affecting her. Before her alleged depression which is the basis of this claim, plaintiff was suffering from anxiety, hypertension, arthritis and various other aches, pains and malaise. She was taking Xantac, Vaseretic and occasionally Restoril, Pamelor, Halcion and Deseryl. In a report of medical history filled out by plaintiff on February 9, 1990, plaintiff reported "nervous trouble" and "frequent trouble sleeping". Plaintiff's husband worked out of town and was only home on weekends. In addition, her mother and brother had recently died.
6. In the fall of 1994, plaintiff had a "run-in" with her plant supervisor, Al Loosemore, regarding her lack of effort at work. On December 1, 1994, an assembly line for which plaintiff prepared ran out of L-brackets. Her supervisor, Richard Church, voiced his displeasure in her work. On December 2, 1994, plaintiff took sick leave. On December 3, 1994, plaintiff returned to work and again the line stopped because she had not prepared the L-brackets. As a result of this work stoppage, Richard Church called plaintiff into the office and, since the plant manager was not around to handle the situation, asked her to leave in an effort to defuse the situation. Plaintiff indicated that she did not want to leave, whereby Mr. Church told her he would give her a police escort if she did not leave willingly. Plaintiff left the office and headed toward the bathroom at which time Mr. Church again asked her to leave. Mr. Church did not hit, curse or intimidate plaintiff other than to instruct her to leave, albeit using a loud voice. Plaintiff finally left the building shortly thereafter and was smiling and laughing about the incident.
7. On December 5, 1994, plaintiff returned to work and talked with plant manager Al Loosemore in his office. Mr. Loosemore informed the plaintiff that he needed to investigate the incident of December 3 and requested that she go home for the day of December 5. The records of defendant-employer establish that plaintiff was paid a full days' work for December 5, 1994.
8. On December 6, 1994, plaintiff returned to defendant-employer and met again with Mr. Loosemore. At this meeting, Mr. Loosemore advised the plaintiff that she could return to her normal work routine and that he would give her a schedule. At the hearing, plaintiff testified that she never got the schedule and did not know whether or not the schedule had anything to do with her work. Shortly after the plaintiff returned to work, she began crying uncontrollably and returned to Mr. Loosemore's office. Mr. Loosemore summoned Richard Church who attempted to help the plaintiff and eventually drove her to her own family doctor, Dr. Parker. Mr. Church remained at Dr. Parker's office until the plaintiff was examined and then drove her back to defendant-employer in order that someone could come and take her home.
9. Plaintiff's employment at defendant-employer was not terminated and at the time of the hearing she was still an employee and was accruing pension benefits. Plaintiff has not returned to work at defendant-employer's since the events of December 6, 1994, claiming that she is totally and permanently disabled due to depression allegedly caused by the way her supervisors "hollered" at her.
10. Plaintiff was subsequently treated for depression at Charter Hospital where she told an attendant the following: "If I got the right opportunity and returned to my job, I would shoot all 25 of the people on the evening shift without even blinking an eye." Plaintiff has not attempted to find employment anywhere since leaving defendant-employer on December 6, 1995.
11. The lay testimony presented by plaintiff with regards to the events which occurred in December of 1994 were not viewed as credible by the deputy commissioner. The Full Commission adopts this credibility finding of the deputy commissioner. Greater weight is assigned to the testimony as to the account of events offered by Mr. Richard Church and Mr. Al Loosemore.
12. There is insufficient medical evidence to establish that plaintiff's depression for which she suffered and the subsequent treatment she received were caused by, aggravated by or necessitated by any injury by accident or occupational disease suffered during the course of her employment with defendant-employer.
13. Plaintiff's depression was not caused by, or aggravated by an objectively unusual or unexpected, sudden and shocking event encountered at work.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's depression did not result from an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has no disease and no disability related to causes and conditions which were characteristic of and peculiar to her employment with defendant-employer. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff is, therefore, entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6) and 53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following order:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is DENIED.
2. Each side shall bear its own costs.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER